UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____
LINDA HARVEY,

                    Plaintiff,          05-CV-0903T

        v.                                 **DECISION**
                                                     **and ORDER**
JO ANNE B. BARNHART,
Commissioner of Social Security

                    Defendant.
_____

## **INTRODUCTION**

Plaintiff Linda Harvey ("Harvey" or "Plaintiff"), brings this action pursuant to Title II of the Social Security Act, claiming that the Commissioner of Social Security ("Commissioner" or "Defendant") improperly denied her application for Disability Insurance Benefits ("DIB").[1]  Specifically, the plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") who heard her case was erroneous because it was not supported by substantial evidence in the record and was based upon an erroneous legal standard.

The Commissioner moves for judgment on the pleadings pursuant to 42 U.S.C. 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure.  The plaintiff opposes the Commissioner's motion. The Commissioner claims that the ALJ's decision was supported by

---

[1]This case was transferred to the undersigned by the Honorable Richard J. Arcara, Chief Judge, United States District Court for the Western District of New York by Order dated July 24, 2007.

substantial evidence whereas the plaintiff claims the opposite. Because this court finds that the Commissioner's decision was not supported by substantial evidence, and because this court has the power to affirm, modify, or reverse the Commissioner's decision pursuant to § 405(g), judgment on the pleadings is hereby granted for the plaintiff.

## BACKGROUND

On May 7, 2002, Plaintiff Linda Harvey applied for DIB claiming that she became disabled on June 15, 1996 due to cervical spine disc herniations, cervical radiculopathy, spinal stenosis, intolerance to medications, depression, and panic attacks (Tr. 109). At the time of her application, she was 39 years-old with a high school education and one year of nursing school (Tr. 50, 97, 104, 175, 178).

Harvey worked as a medical secretary and receptionist from 1987 through 2001, but periodic employment gaps started to occur in 1996 due to neck, back, shoulder, and right arm pain (Tr. 37, 102, 110, 178). Harvey did not work from June 1996 through March 1999 nor did she work from July 1999 through November 2000 (Tr. 102, 110). She finally stopped working altogether on August 23, 2001 (Tr. 109, 275).

The Social Security Administration initially denied Harvey's disability application (Tr. 58-65). She then appealed and an administrative hearing was held in Buffalo before ALJ John J.

Mulrooney (Tr. 14, 23, 71). On October 27, 2004, the ALJ found that Harvey was not disabled and, on November 14, 2005, the Social Security Appeals Council denied review of the ALJ's decision (Tr. 5-10). The plaintiff then filed this action on September 28, 2005.

## **DISCUSSION**

### **I.   JURISDICTION AND SCOPE OF REVIEW**

Title 42, Section 405(g) of the United States Code grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits. Mathews v. Eldridge, 424 U.S. 319, 320 (1976). Additionally, Section 405(g) directs that the District Court must accept the Commissioner's findings of fact if those findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., No. 06-2019-cv, 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. Apr. 24, 2007).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Section 405(g) thus limits this court's scope of review to two inquiries: (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and

(ii) whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

The defendant moves for judgment on the pleadings pursuant to 42 U.S.C. 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure. Section 405(g) provides that the District Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.S. § 405(g) (2007). Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988).

A District Court should order payment of Social Security disability benefits in cases where the record contains persuasive proof of disability and remand for further evidentiary proceedings would serve no further purpose. See Carroll v. Secretary of Health and Human Serv., 705 F.2d 638, 644 (2d Cir. 1981). The goal of this policy is "to shorten the often painfully slow process by

which disability determinations are made." Id.  Because this court finds that (1) the ALJ's decision was not supported by substantial evidence and (2) the record contains substantial evidence of disability such that further evidentiary proceedings would serve no further purpose, judgment on the pleadings is hereby granted for the plaintiff.

**II.   STANDARD FOR ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

Under the Social Security Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ..."  42 U.S.C. § 423(d)(1)(A).  An individual will only be considered "under a disability" if her impairment is so severe that she is both unable to do her previous work *and* unable to engage in any other kind of substantial gainful work that exists in the national economy.  § 423(d)(2)(A).

"Substantial gainful work" is defined as "work that exists in significant numbers either in the region where the individual lives or in several regions of the country."  Id.  Work may be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if work responsibilities are lessened from previous employment.  20 C.F.R. § 404.1572(a).  Work may be considered "gainful" if it is the kind of work usually done for pay

or profit, whether or not a profit is realized. § 404.1572(b). Furthermore, "substantial gainful work" is considered available to an individual regardless of whether such work exists in her immediate area, whether a specific job vacancy exists for her, or whether she would be hired if she were to apply for work. 42 U.S.C. § 423(d)(2)(A).

When a claimant requests a Social Security disability hearing before an Administrative Law Judge, SSA regulations require the ALJ to perform the following five-step sequential evaluation:

   (i)   if the claimant is performing substantial gainful work, she is not disabled;

   (ii)  if the claimant is not performing substantial gainful work, her impairment(s) must be "severe" before she can be found to be disabled;

   (iii) if the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry;

   (iv)  if the claimant's impairment (or impairments) does not prevent her from doing her past relevant work, she is not disabled;

   (v)   even if the claimant's impairment or impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

20 C.F.R. § 404.1520(a)(4)(i)-(v). The ALJ in this case performed the required five-step evaluation and determined that:

(i) the plaintiff had not engaged in substantial gainful employment since August 23, 2001; (ii) the plaintiff's bipolar disorder, panic disorder, past history of alcohol abuse, depressive disorder, personality disorder, herniated disk in the cervical spine, chronic vestibular neuritis, and generalized anxiety disorder were considered "severe" under § 404.1520(c); (iii) the plaintiff's conditions did not meet or medically equal any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (iv) the plaintiff was unable to perform her past relevant work as a secretary and receptionist due to nonexertional limitations, and; (v) the plaintiff retained the residual functional capacity ("RFC") to perform some "light work" but, because of her postural limitations and mental conditions, this was limited to occasional postural maneuvering and overhead reaching, occasional pushing and pulling with the upper extremities, and simple/routine tasks in a non-production, non-quota based environment involving no interaction with the public and only limited interaction with supervisors and co-workers (Tr. 24).

This court holds that the ALJ's finding adverse to the plaintiff in step (iii) of the evaluation process [that none of the plaintiff's conditions equaled a listed impairment] was not supported by substantial evidence in the record as a whole. The plaintiff's anxiety and depression satisfy the regulatory listings at 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06.

Furthermore, this court finds that the record contains substantial evidence of manic syndrome and bipolar syndrome in satisfaction of § 12.04 of the regulatory listings.

### III. THE PLAINTIFF'S DEPRESSION, MANIA, BIPOLAR DISORDER, AND ANXIETY QUALIFY AS "LISTED IMPAIRMENTS" IN SATISFACTION OF STEP (iii) OF THE EVALUATION PROCESS.

#### A. The Functional Criteria of Sections 12.04B and 12.06B are Satisfied by Substantial Medical Evidence in the Record.

Depressive syndrome, manic syndrome, bipolar syndrome, and anxiety-related disorders will qualify as "listed impairments" in step (iii) of the evaluation process when, among other things, two of the following four functional criteria are met:

- Marked restriction of activities of daily living; or
- Marked difficulties in maintaining social functioning; or
- Marked difficulties in maintaining concentration, persistence, or pace; or
- Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04B, 12.06B. The record contains substantial evidence that the plaintiff experiences marked difficulties in maintaining social functioning as well as marked difficulties in maintaining concentration, persistence, and pace.

The medical professional in the record most familiar with the plaintiff's mental state was psychiatrist Michael Mogerman, M.D. (Tr. 237-40, 271-82). Dr. Mogerman treated the plaintiff at least thirteen times between January 2, 2003 and July 29, 2004. Id. He

noted that the plaintiff had difficulties maintaining concentration, persistence, and pace which would interfere with her ability to function in a work setting (Tr. 240). He also noted that the plaintiff experienced marked difficulty maintaining social functioning (Tr. 273, 275, 278).

On August 7, 2003, Dr. Mogerman wrote that the plaintiff had "episodes of panic, freezing up, [and] difficulty completing conversation and sentence[s] when interpersonally engaged" (Tr. 278). The doctor then noted on January 20, 2004 that:

> "anxiety and panic remain problematic, two times per week, discomfort around others, conversant only with parents. She indicates family gathering over holidays, generally withdrawn, unresponsive... The patient indicates continued feeling of [being] terrified around others, withdrawn and nervous, ongoing panic as noted."

(Tr. 275). Also, on March 24, 2004, Dr. Mogerman wrote that: "There has been some panic... sitting out in waiting room was a near miss..." (Tr. 273). He diagnosed the plaintiff with bipolar disorder (type II), panic disorder, obsessive compulsive disorder, and alcohol abuse in remission while listing the plaintiff's Axis V Global Assessment of Function ("GAF") as "50" (Tr. 238). A score of 50 is associated with "serious symptoms ... or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders at 32 (4th ed.).

Other substantial evidence in the record supports Dr. Mogerman's observations. Before being treated by Dr. Mogerman, the plaintiff was treated at least six times from February 12, 2002 to April 22, 2002 by Maria Nickolova, M.D. (Tr. 159-66). Dr. Nickolova increased the plaintiff's Zoloft dosage and initiated Ativan after diagnosing the plaintiff with "Depressive disorder NOS, panic disorder without agoraphobia, rule out bipolar type II." (Tr. 165). The doctor also noted "interpersonal problems" and "GAF of 50 to 55." Id.  Dr. Nickolova then confirmed bipolar disorder (type II) in subsequent treatment visits and noted that the plaintiff was sometimes "anxious," "fearful," and vacillated between euthymic and depressed mood states (Tr. 159-62).

Examining consultative psychologist Alan F. Dubro, Ph.D., also came to conclusions that were consistent with both of the plaintiff's treating psychiatrists (Tr. 178-82). Dr. Dubro noted that the plaintiff's "affective expression was constricted in range" and that her "mood was anxious during the evaluation" (Tr. 180). He also stated that the plaintiff "has difficulty performing complex tasks independently, relating adequately to others, and dealing with stress" (Tr. 181). Dr. Dubro diagnosed the plaintiff with depressive disorder NOS, generalized anxiety disorder, alcohol abuse in remission, and chronic pain syndrome. Id. [2]

---

[2] Both Dr. Dubro and Dr. Mogerman considered the plaintiff's past alcohol abuse to be a resolved condition (Tr. 181, 275-76). Her prior drinking is therefore not material to this disability determination and does not preclude a grant of benefits. See 42 U.S.C. 423(d)(2)(C); see also 20 C.F.R.

**B.   The Diagnostic Criteria of Sections 12.04A and 12.06A Are Satisfied with Regard to the Plaintiff's Depression, Mania, Bipolar Disorder, and Anxiety.**

<u>1.   The Plaintiff's Depressive Syndrome Satisfies the Regulatory Diagnostic Criteria of Section 12.04A.</u>

Depression will qualify as a "listed impairment" in step (iii) of the evaluation process if there is medically documented persistence, either continuous or intermittent, of depressive syndrome characterized by at least four of the following:

a.  Anhedonia or pervasive loss of interest in almost all activities;
b.  Appetite disturbance with change in weight;
c.  Sleep disturbance;
d.  Psychomotor agitation or retardation;
e.  Decreased energy;
f.  Feelings of guilt or worthlessness;
g.  Difficulty concentrating or thinking;
h.  Thoughts of suicide;
i.  Hallucinations, delusions or paranoid thinking...

resulting in two of the four functional limitations previously described in section III-A of this Decision.  20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04A, 12.04B.

Anhedonia is documented in the record by Drs. Nickolova and Mogerman (Tr. 164, 239, 267).  Appetite disturbance was also noted with a reference to weight concerns (Tr. 238, 271-72).[3]  Sleep disturbance was present (Tr. 238, 272, 274, 276).   And both

---

§ 404.1535(b).

[3] Although appetite disturbance was noted along with weight concerns, Dr. Mogerman felt that the plaintiff's appetite fluctuations were "mood congruent and within adequate range." (Tr. 239).

Dr. Mogerman's notes and Dr. Nickolova's notes reported decreased energy, feelings of guilt or worthlessness, and difficulty concentrating (Tr. 164, 238, 240, 272, 274, 276, 282). The plaintiff also had thoughts of suicide although there was no accompanying intent or plan (Tr. 271) and she reported that she "felt as if she was in a dream state [and that] her head was separated from the body..." (Tr. 238). This court finds that at least four of the § 12.04A depressive syndrome criteria are present in the medical record.

>    2.   The Plaintiff's Manic Syndrome Satisfies the Regulatory Diagnostic Criteria of Section 12.04A.

Mania will qualify as a "listed impairment" in step (iii) of the evaluation process if there is medically documented persistence, either continuous or intermittent, of manic syndrome characterized by at least three of the following:

    a.   Hyperactivity;
    b.   Pressure of speech;
    c.   Flight of ideas;
    d.   Inflated self-esteem;
    e.   Decreased need for sleep;
    f.   Easy distractibility;
    g.   Involvement in activities that have a high probability of
         painful consequences which are not recognized; or
    h.   Hallucinations, delusions, or paranoid thinking...

resulting in two of the four functional limitations previously described in section III-A of this Decision. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04A, 12.04B.

Hyperactivity, flight of ideas, inflated self-esteem and easy distractibility were all reported by Dr. Mogerman (Tr. 238, 240).

Therefore, at least three of the § 12.04A manic syndrome criteria are present in the medical record.

### 3. The Plaintiff's Bipolar Syndrome Satisfies the Regulatory Diagnostic Criteria of Section 12.04A.

Bipolar syndrome will qualify as a "listed impairment" in step (iii) of the evaluation process if there is:

> a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes)...

resulting in two of the four functional limitations previously described in section III-A of this Decision. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04A, 12.04B.

Both of the treating psychiatrists in the record (Dr. Nickolova and Dr. Mogerman) diagnosed the plaintiff with bipolar disorder, type II (Tr. 165, 238). Their diagnoses are supported by their treatment notes and by the substantial weight of other medical evidence in the record. The § 12.04A diagnostic criteria for bipolar disorder are therefore satisfied.

### 4. The Plaintiff's Anxiety-Related Disorder Satisfies the Diagnostic Criteria of Section 12.06A.

In step (iii) of the five-step evaluation, anxiety will qualify as a "listed impairment" if there are medically documented findings of:

> Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week...

resulting in two of the four 12.06B functional limitations previously described in section III-A of this Decision. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.06A, 12.06B. Additionally, if the functional limitations of § 12.06B are not present, § 12.06C provides that anxiety will still qualify as a listed impairment if it causes "complete inability to function independently outside the area of one's home." § 12.06C.

The ALJ concluded in his decision that the plaintiff's anxiety did not qualify as a listed impairment because "Ms. Harvey does not have a complete inability to function independently outside the area of her home." (Tr. 16). However, this court finds that the plaintiff's anxiety satisfies the requirements of §§ 12.06A and 12.06B because: (1) Dr. Mogerman noted that the plaintiff suffers from recurrent severe panic attacks occurring on average at least once per week (Tr. 238-39, 273, 277); (2) the plaintiff has marked difficulties in maintaining social functioning (Tr. 165, 238, 275, 278), and; (4) the plaintiff has marked difficulties in maintaining concentration, persistence, and/or pace (Tr. 238, 240).

**C.  The ALJ Improperly Discounted Dr. Mogerman's Opinion under the SSA's Treating Physician Rule.**

Dr. Mogerman treated the plaintiff at least thirteen times between January 2, 2003 and July 29, 2004 and his opinion is consistent with notes from both Dr. Nickolova, the plaintiff's other treating psychologist, and Dr. Dubro, an examining

consultative psychologist (Tr. 164-65, 178-82, 238-40, 271-82). The ALJ should therefore have given Dr. Mogerman's opinion controlling weight under the treating physician rule.

SSA regulations outline the treating physician rule with the following text:

> Generally, we give more weight to opinions from your treating sources ... If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. § 404.1527(d)(2). The regulations also state that claimants will receive explanations, or "good reasons," for the weight assigned to a treating physician's opinion. Id. The factors that an ALJ must apply when a treating physician's opinion is not given controlling weight include: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors." Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) (citing §§ 404.1527(d)(2) and 416.927(d)(2)). Because the ALJ did not give "good reasons," and because Dr. Mogerman's opinion is supported by other physicians in the record, the ALJ improperly

discounted Dr. Mogerman's opinion in failing to give it controlling weight pursuant to the treating physician rule.

## **CONCLUSION**

This court finds that the Commissioner's decision denying the plaintiff's disability application was not supported by substantial evidence.  The record contains substantial evidence of disability such that further evidentiary proceedings would serve no further purpose.  I therefore grant judgment on the pleadings in favor of the plaintiff and remand this matter to the Social Security Administration for calculation of benefits.

ALL OF THE ABOVE IS SO ORDERED.

                                         s/ Michael A. Telesca
                                            MICHAEL A. TELESCA
                                  United States District Judge

Dated:     Rochester, New York
           August 7, 2007